*TRANSCRIBED FROM DIGITAL RECORDING*
*2:21-cr-00002-JAD-NJK-1 • 1/29/2021*

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                        FOR THE DISTRICT OF NEVADA

 3    UNITED STATES OF AMERICA,     )
                                    ) Case No. 2:21-cr-00002-JAD-NJK
 4              Plaintiff,          )
                                    ) Las Vegas, Nevada
 5    vs.                           ) January 29, 2021
                                    ) Courtroom 3D
 6    STEPHON JAMES WHITNEY,        )
                                    )
 7                                  ) Recording method:
                Defendant.          ) Liberty/CRD
 8    _____ ) 10:07 a.m. - 10:36 a.m.
                                      10:50 a.m. - 10:50 a.m.
 9                                    DETENTION HEARING

10                              CERTIFIED COPY

11           TRANSCRIPT OF PROCEEDINGS CONDUCTED VIA ZOOM
                 BEFORE THE HONORABLE CAM FERENBACH
12          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13

14    APPEARANCES:

15    For the Government:    DANIEL COWHIG, AUSA
                             UNITED STATES ATTORNEY'S OFFICE
16                           501 Las Vegas Boulevard South, Suite 1100
                             Las Vegas, Nevada 89101
17                           (702) 388-6336

18

19    (Appearances continued on page 2.)

20    Recorded by:          Tawnee Renfro

21    Transcribed by:       Amber M. McClane, RPR, CRR, CCR #914
                            United States District Court
22                          333 Las Vegas Boulevard South, Room 1334
                            Las Vegas, Nevada 89101
23                          (702) 384-0429 or AM@nvd.uscourts.gov

24    Proceedings recorded by electronic sound recording.
      Transcript produced by mechanical stenography and computer.
25
```

```
 1    APPEARANCES CONTINUED:

 2    For the Defendant:

 3         YI LIN ZHENG, ESQ.
           VEGAS GOLDEN LAW
 4         2801 South Valley View Boulevard, Suite 16
           Las Vegas, Nevada 89102
 5         (702) 385-7170

 6    Also Present:

 7         Jessie Moorehead, Pretrial Services

 8

 9                         * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*TRANSCRIBED FROM DIGITAL RECORDING*
*2:21-cr-00002-JAD-NJK-1 • 1/29/2021*

1          LAS VEGAS, NEVADA; FRIDAY, JANUARY 29, 2021; 10:07 A.M.

2                              --o0o--

3                      P R O C E E D I N G S

4          **COURTROOM ADMINISTRATOR:**  This is the time set for a

5    detention hearing in Case 2:21-cr-2-JAD-NJK, United States of

6    America versus Stephon James Whitney.

7          Counsel, please enter your appearance for the record

8    beginning with the Government.

9          **MR. COWHIG:**  Good morning, Your Honor.  Dan Cowhig

10   for the United States.

11         **THE COURT:**  Good morning, Mr. Cowhig.

12         **MS. ZHENG:**  And good morning, Your Honor.  Yi Lin

13   Zheng on behalf of the defendant, Stephon Whitney.  And he is

14   also present in custody at the Nevada Southern Detention

15   Center appearing via video.

16         **THE COURT:**  Thank you, Ms. Zheng.

17         Mr. Whitney, can you hear me okay?

18         **THE DEFENDANT:**  Yes, sir.

19         **THE COURT:**  And last time you appeared I read a

20   disclosure about why we were doing video hearings.  Do you

21   consent to appearing by video at this hearing?

22         **THE DEFENDANT:**  Yes, sir.

23         **THE COURT:**  Okay.  Thank you.

24         All right.  So this is interesting.  We've got -- we

25   had set this for the detention hearing.  I did receive an

1    updated report from Pretrial Services based on the interview

2    that was conducted on -- on January 27th.  Have both counsel

3    seen this?

4         **MR. COWHIG:**  Yes, Your Honor.

5         **MS. ZHENG:**  Yes, Your Honor.

6         **THE COURT:**  Okay.  Good.

7         And then, Ms. Zheng, as -- as I suggested, she's

8    filed a memo regarding defendant's waiver of temporary right

9    to custody under the Interstate Agreement on Detainers Act,

10   which I've read.  And of course we already have in the docket

11   the waiver.  That's Number 11.

12        So I think the first thing I have to decide is:  Am I

13   going to address the detention issue first -- you know,

14   because this is set for a detention hearing -- and then deal

15   with the interstate waiver rights and so on?  Or, I guess, I

16   think Ms. Zheng wants me to do the interstate waiver thing

17   first, decide that, and if I'm going to let -- allow him to go

18   back to state custody, then just have him be temporarily

19   detained here.  And then we do the detention hearing once he

20   gets transferred back here after his parole situation is

21   worked out over there.

22        Let me ask Ms. Zheng.  Is that what you would prefer,

23   Ms. Zheng?

24        **MS. ZHENG:**  That is my preference, Your Honor.  I

25   mean, certainly I understand the -- generally with federal

```
 1   cases, if I were to reopen a detention hearing, I would have
 2   to petition the Court to do so anyway.  As of this point, you
 3   know, clearly I would like to argue for his release.  However,
 4   I understand that at this point that argument would be moot
 5   because I do understand that he has a state detainer that he,
 6   in fact, is serving a sentence on.  And so rather than doing
 7   it now [indiscernible] and redoing it when there's a change
 8   in -- material change in circumstances, I would understand
 9   that he would temporarily be detained; that the U.S. Marshal
10   Service would lodge a detainer against him, thereby he
11   wouldn't just be released when he has completed his state
12   sentence; and that he would return to federal custody, and
13   that we could address his detention as to the federal case
14   specifically at that time.
15           THE COURT:  Right.  Okay.  I -- so I do understand
16   your position.
17           What's the Government think about all this,
18   Mr. Cowhig?
19           MR. COWHIG:  Your Honor, the Government --
20           THE COURT:  Whoa.  Mr. Cowhig, your --
21           MR. COWHIG:  -- position.  First on the Interstate
22   Agreement on Detainers --
23           THE COURT:  Hold on.
24           MR. COWHIG:  -- the waiver is not valid because --
25           THE COURT:  Mr. Cowhig, hold on.  Hold on.
```

1       You -- your video is frozen, and your audio is

2   intermittent.  So I'm not understanding what you're saying.

3       **MR. COWHIG:**  Am I back, Your Honor?

4       **THE COURT:**  Apparently.  Let's try again.  Start over

5   at the beginning.

6       **MR. COWHIG:**  I'll -- I'll try a little more slowly

7   and minimize my movements.

8       The waiver I believe is defective because it does not

9   include a waiver of the time frames set out in Article IV(a)

10   of the Interstate Agreement on Detainers -- I'm sorry, IV(e),

11   echo.

12       **THE COURT:**  So the --

13       **MR. COWHIG:**  The Interstate Agreement on Detainers

14   sets --

15       **THE COURT:**  Okay.  You know what?  I've got that up

16   here, I think, on Westlaw.  So let me... let me...

17       Okay.  I've got section 2, enacted into law,

18   Interstate Agreement on Detainers.  There's Article I,

19   Article II, Article III -- is that the thing we're talking

20   about?  Or -- or do you have --

21       **MS. ZHENG:**  That is, Your Honor.  And if I understand

22   what the Government is saying, I think we could cure that

23   defect.  In essence, what it is, is that --

24       **THE COURT:**  Ms. Zheng.  Ms. Zheng, hold on.  I've

25   never read this thing before, so I want to find the section

1    he's talking about and read it, and then I'll hear you.  Okay?

2            **MS. ZHENG:**  Okay.

3            **THE COURT:**  So what -- you're saying IV(e)?  Okay.

4    IV(e) --

5            **MR. COWHIG:**  IV -- yes, Your Honor.  IV(e).

6            **THE COURT:**  If trial is -- if trial is not had on any

7    indictment prior to the prisoner's being returned to the

8    original place of imprisonment, such indictment shall not be

9    of any further force or effect, and the Court shall enter an

10   order dismissing the same with prejudice; is that the section

11   you're talking about?

12           **MR. COWHIG:**  Yes, Your Honor.  And there's a time

13   frame set in IV(c) of 120 days to begin the trial, which is

14   different from the Speedy Trial Act.

15           **THE COURT:**  Oh.  Okay.  And, of course, this is set

16   up between states, the receiving state and the sending state,

17   and we've got the Federal Government here.  So is it

18   interpreted that state means Federal Government under this

19   context?

20           **MR. COWHIG:**  Yes, Your Honor.

21           **THE COURT:**  Oh.  Okay.  Now, I did find there's a

22   section 9, special provision when United States is a receiving

23   state.  So I thought that might be helpful.  It says:

24   Notwithstanding any provision of the agreement on detainers to

25   the contrary, in a case where the United States is the

```
 1   receiving state, any order of a court dismissing any

 2   indictment, information, or complaint may be with or without

 3   prejudice.  In determining whether to dismiss the case with or

 4   without prejudice, the Court shall consider, among other

 5   things, each of the following factors:  Seriousness of

 6   offense, facts and circumstances in the case which led to the

 7   dismissal, and the impact of re-prosecution on the

 8   administration of the agreement on detainers or the

 9   administration of justice.  I don't think that applies.

10   Maybe.  I don't know.

11           But then the second part says:  It shall not be a

12   violation of the agreement on detainers if, prior to trial,

13   the prisoner's returned to the custody of the sending state

14   pursuant to an order of the appropriate court issued after

15   reasonable notice to the prisoner and the United States and an

16   opportunity for a hearing.

17           So that kind of sounds like it lets me do that.  You

18   know, that seems to support what Ms. Zheng is asking.  But

19   you're saying because the waiver is defective?  Well, it

20   wouldn't matter if the waiver --

21           **MR. COWHIG:**  Yes.

22           **THE COURT:**  Because this act says I can do that even

23   if he doesn't waive his rights under the...

24           **MR. COWHIG:**  Yes, Your Honor.  It does allow the

25   Court of its -- *sua sponte* to return a prisoner to the state.
```

1          **THE COURT:**  Okay.  Okay.  And the reason that's in

2   there is, if I understand this, this -- this Interstate

3   Compact was to prevent states and government -- and the U.S.

4   Government from shuttling people back and forth kind of

5   against their will.  It was making them stay in one place

6   until something got resolved, and then they can be sent

7   some -- it was called the anti-shuttling statute; right?

8          **MR. COWHIG:**  Yes, Your Honor.  And it -- its general

9   purpose is, when there's more than one trial underway, to

10  finish one trial before heading to the other trial.

11         **THE COURT:**  Right.

12         **MR. COWHIG:**  In this instance, we only have our

13  trial.  There is no state proceeding underway.

14         **THE COURT:**  Well, apparently there's a -- what --

15  didn't you say something's happening in the state court,

16  Ms. Zheng?

17         **MS. ZHENG:**  Well, he is set to go before the Parole

18  Board.  So it's not specifically in front of the state court.

19         But one of the other ideas behind the anti-shuttling

20  act is that not only is it just a [indiscernible] impacts his

21  programming status, his ability to be seen by the Parole Board

22  in this case if he were held in federal custody.  And,

23  ultimately, it's going to impact his calculation of time as we

24  go further down the road.  He is very close to ending his

25  state sentence.  And, quite frankly, where we have our trial

1    set right now in March, it wouldn't -- it wouldn't interfere

2    with our trial.  However, it would allow him to be seen by the

3    Parole Board and hopefully to be granted parole so that, when

4    he returns to federal custody, there would be no further

5    detainers and this would be the only case at issue.

6            **THE COURT:**  Right.  So -- so your proposal is that

7    I -- I order him temporarily detained without holding a

8    detention hearing, and I'd have to find good cause not to hold

9    the detention hearing without the time required.  And I'd

10   order him temporarily detained then and order that he be

11   returned back to the custody of the state so he can have his

12   parole hearing.  And then, if -- if he's -- what -- well, I

13   guess one of two things would happen.  Either he'll be paroled

14   or he won't; right?  So if he's --

15           **MS. ZHENG:**  Right.

16           **THE COURT:**  -- not paroled, he'll still be in

17   custody.  So I'd say, if he's not paroled, then he should be

18   ordered back here forthwith after the -- the hearing.  And if

19   he is paroled, well, then, obviously there would be a detainer

20   and he'd -- he'd come back.  So does that --

21           **MS. ZHENG:**  Correct.

22           **THE COURT:**  So that's kind of what you --

23           **MS. ZHENG:**  Yes.

24           **THE COURT:**  -- have in mind?

25           And so he's gonna stay detained -- if I hold a

TRANSCRIBED FROM DIGITAL RECORDING
2:21-cr-00002-JAD-NJK-1 • 1/29/2021

1    detention hearing today and detain him, then he's gonna stay

2    here and be detained.  And I could still order him back and

3    have him come back, whether he's temporarily detained or not.

4    But you'd like to have the detention hearing later because you

5    want the parole part to be tied up before you have the

6    detention hearing?

7         **MS. ZHENG:**  That would be my preference, Your Honor,

8    yes.

9         **THE COURT:**  Okay.  And why does the Government object

10   to that, Mr. Cowhig, if you do?

11        **MR. COWHIG:**  Your Honor, we believe that he -- he

12   needs to have his detention hearing now.  He has been brought

13   over into federal custody.  He has been held in federal

14   physical custody.  His state time continues to run.  He is not

15   losing any time on his state sentence because he's in physical

16   federal custody, but his state sentence continues to run under

17   the interstate agreement.

18        **THE COURT:**  All right.  Okay.  Well, I think I

19   understand that.

20        And -- and still, I guess, I just want to make

21   sure -- sort of a hypothetical -- but suppose I hold the

22   detention hearing, and I do detain him.  Then I could still

23   order him back to get his parole hearing done, and then have

24   him come back because he'll still be -- have a hold here.  And

25   the only difference really would be, if you wanted to reopen,

1  you'd have a -- an extra hurdle to go over, Ms. Zheng, is

2  that...

3        **MS. ZHENG:**  Sure.  And if the Court prefers to have

4  the detention hearing, I would just ask the Court for leave to

5  allow me to reopen the detention hearing if and when he does

6  resolve his parole status because it would be a material

7  change in circumstances.

8        **THE COURT:**  Okay.  So let me just make sure.  From

9  your point of view, Mr. Cowhig, if I were to detain him today,

10 would the Government object to me ordering that he be -- go

11 back to state court to get the parole hearing out of the way,

12 and then come back as soon as it's over, whatever happens?

13       **MR. COWHIG:**  Your Honor, I believe that under the

14 interstate agreement on detainers, he has the right to return

15 to state custody where he makes an appropriate request and

16 waiver.

17       **THE COURT:**  Right.

18       **MR. COWHIG:**  The facilities would have involvement

19 and input in that because there're a matter of practicalities

20 under COVID.  We have quarantine on both ends of 14 days.

21       **THE COURT:**  Right.

22       **MR. COWHIG:**  And although Ms. Zheng has mentioned

23 our -- our trial date which is in March, there are dates

24 before that occasion which will be important.  And it's not

25 clear that the state prison, which is not a pretrial holding

TRANSCRIBED FROM DIGITAL RECORDING
2:21-cr-00002-JAD-NJK-1 • 1/29/2021

1    facility, has the capability to provide facilities for

2    conference with attorney-client privilege, to handle

3    discovery, and those sorts of things that would be an ordinary

4    part of the pretrial process.

5          **THE COURT:**  Well, that is a factor, Ms. Zheng.

6    What --

7          **MS. ZHENG:**  As of right now, neither facilities will

8    allow me to see the client in custody.  I represented

9    Mr. Whitney on the underlying case in state court that he is

10   currently in custody on.  So we have been in contact, and I've

11   been in contact with his family.  He is allowed phone calls.

12   He has been making phone calls to me in either facility.  In

13   fact, I haven't heard from him while he's been at Pahrump.

14   Meanwhile, I've had telephone calls for him while he was in

15   state.  The difference is that, in Pahrump, through the

16   Federal Public Defender's Office, they've been kind enough to

17   set up video visits --

18         **THE COURT:**  Video chats, yeah.

19         **MS. ZHENG:**  -- as necessary, so...

20         **THE COURT:**  All right.  Okay.  Well, you know what?

21   Let's go ahead and do the detention hearing, and we'll address

22   the second part in a minute.

23         But I think the Government's right that there's

24   really no reason to delay the detention hearing, and so I'm

25   going to do that now.

*TRANSCRIBED FROM DIGITAL RECORDING*
*2:21-cr-00002-JAD-NJK-1 • 1/29/2021*

1    So, Mr. Cowhig, what's the Government's position on

2  pretrial release?

3    **MR. COWHIG:**  Your Honor, the Government seeks

4  detention.

5    **THE COURT:**  And you're ready to proceed?

6    **MR. COWHIG:**  We are, Your Honor.

7    **THE COURT:**  Okay.  And, Ms. Zheng, are you ready?

8    **MS. ZHENG:**  Yes, Your Honor.

9    **THE COURT:**  Okay.  I'll hear from the Government

10  first, please.

11    **MR. COWHIG:**  Your Honor, I believe in our last

12  hearing I moved under 18 United States Code § 3142(f)(1)(E) as

13  this case involves a firearm.

14    We proffer and adopt the report of Pretrial Services.

15  Mr. Whitney has an extensive criminal record.  He committed

16  the charged offense while on state supervision for another

17  offense.  He has multiple prior trafficking convictions for

18  controlled substances.  As stated by Pretrial Services, he

19  does not have apparent financial resources or ties to this

20  community.  He has a substance abuse history and mental health

21  history.  He has a series of prior probation and parole

22  violations and revocations indicating that he would not comply

23  with conditions of supervision if released and, indeed, did

24  not in this instance.

25    He has -- is currently serving a state revocation

*TRANSCRIBED FROM DIGITAL RECORDING*
*2:21-cr-00002-JAD-NJK-1 • 1/29/2021*

1    sentence, although we don't believe that that is the fact that

2    trips the balance.  We believe that even in the absence of

3    that particular fact, Mr. Whitney should be detained.

4            As to danger, the instant offense is a dangerous

5    offense.  It does involve a firearm.  The other factors which

6    were present for assessment of nonappearance are also present

7    here.  We believe that there are no factors or combination

8    of -- I'm sorry, no conditions or combination of conditions

9    that would reasonably assure his appearance or the safety of

10   the community, and we ask that he be detained.

11           **THE COURT:**  Thank you, Mr. Cowhig.

12           Ms. Zheng.

13           **MS. ZHENG:**  Your Honor, I ask that, absent the parole

14   hold and the fact that he is currently serving that sentence

15   on revocation, that he should be released because the idea is

16   that, prior to that, he was on supervision and he was on

17   supervision for probation.  And, in fact, he was doing

18   relatively well in regards to that.

19           I think that there is a huge switch in terms of the

20   information that we know about him from the initial Pretrial

21   Services report and just the updated report in regards to the

22   fact that he does, in fact, have ties to this community.  He

23   has grown up here.  He has never left the country, and he has

24   been in Nevada for the duration of his life.  His family is

25   here, his two brothers, his mother, and his girlfriend who

1  came into my office and [indiscernible].  So in terms of his

2  ties to the community, I can certainly establish those and

3  vouch for those.

4          He does have financial resources in regards to the

5  fact that, prior to his arrest in the state case, he was

6  receiving unemployment and that he does now, as confirmed

7  by -- well, as verified by his girlfriend and also as was

8  self-reported, that he had a stable working history, that he

9  was employed as a janitor and, prior to that, he was laid off

10 because of COVID and that that's when he got on unemployment.

11 And before that he had a string of jobs which he had told

12 Pretrial about.

13         As to his use history, I think there are conditions

14 certainly that can be crafted against that.  He was on

15 probation, and so any concerns that we have about use, he was

16 periodically tested.  And he was, in fact, on probation for a

17 year and a half, which indicates to me that very much they

18 would be similar conditions to what we could impose pretrial

19 and that he did, in fact, do well while he was on probation

20 during that period of time.  He didn't have negative tests

21 except for the first test that he went into probation, which

22 was a baseline test, and then subsequent to that he had tested

23 clean.

24         And also, in regards to his mental health history, I

25 think that was something that was -- is also -- we can craft

1    conditions around in regards to the fact that his diagnosis,

2    his most recent diagnosis for depression, as he reported to

3    Pretrial, was something that came out of a requirement that he

4    do a mental health assessment while he was on probation.  So I

5    think it indicates that he has the ability to follow

6    directives as needed and to perform and to report to any body

7    that is supervising him for that period of time.

8            I know that the Government speaks to the fact that he

9    has prior felony convictions.  And as to the primary one, the

10   one that he had served time in the Nevada Department of

11   Corrections the first time, I note that he was 17 at the time.

12   And I spoke with the family regarding the circumstances of

13   that case.  It was a robbery, and he had gone to a jewelry

14   store with a friend.  And the friend had brought a gun, and a

15   robbery was performed.  He was standing in the store at the

16   time that the other person ran off.  He was 17; he didn't know

17   what to do.  He was standing in the store.  The alleged -- the

18   victim of the robbery told him to go and to leave, not --

19   perhaps not understanding his -- entirely that he was part of

20   the scheme or not part of the scheme.  But I want to

21   underscore that his involvement in that is limited, and he was

22   17 at the time.  He served a heavy sentence for that.

23           And then, upon getting out, he -- the Government had

24   said that he had trafficking offenses.  While he might have

25   been charged, I will note to the Court that he certainly was

1    not convicted of any type of trafficking offense in the state.

2    In fact, in the state system --

3         **THE COURT:**  Well, hold on.  Hold on, Ms. Zheng.

4    Ms. Zheng, maybe --

5         **MS. ZHENG:**  Yes.

6         **THE COURT:**  On the Pretrial Services report it says

7    8/31/17.  I'm sorry.  No, I'm -- 7/22/18, Number 1 is

8    trafficking Schedule I controlled substance.  And two is

9    possession to sell Scheduled I/II controlled substance.  And

10   it says one dash two, three, eight, nineteen, convicted

11   felony.

12        **MS. ZHENG:**  He was convicted in that case.  His entry

13   of plea to that case was to the possession of controlled

14   substance, not to the trafficking count.

15        **THE COURT:**  Oh.  Well, that's not what the report

16   says; right?  Because it says one, dash, two.  But, I mean --

17        **MS. ZHENG:**  Correct.  And I'm looking at his

18   conviction in the state case as to that.  He did -- he pled to

19   the category [indiscernible] felony on it, which trafficking

20   in the state system is a B.  And so, in fact, it was a

21   possession of controlled substance.

22        **THE COURT:**  Possession --

23        **MS. ZHENG:**  Had he flipped --

24        **THE COURT:**  Wait.  Possession to sell; right?

25        **MS. ZHENG:**  Correct.

1      **THE COURT:**  Okay.  Well -- okay.  Okay.  Go ahead.

2      **MS. ZHENG:**  But nonetheless, he was granted probation

3  in that case.  And so that was -- and the conviction stemmed

4  from July of '19 and up until I think it was September.  So he

5  had been on probation for a little more than a year.  And I

6  think that period of time indicates his ability to have

7  conditions of release crafted around him and his interaction

8  with the Department of Probation indicates to me that he would

9  be able to have positive interactions with the Department of

10  Pretrial Services.

11      **THE COURT:**  Okay, Ms. Zheng.  Thank you.  I

12  understand your position.

13      Anything more, Mr. Cowhig?

14      **MR. COWHIG:**  No, Your Honor.  Thank you.

15      **THE COURT:**  All right.  All right.  The charge here

16  is felon in possession of a firearm, one count.  Defendant is

17  a lifelong Las Vegas resident, except when he was

18  incarcerated, and, you know, has I would say ties to this

19  community.  But his employment history, while there is an

20  employment history, it's somewhat spotty.  He was employed and

21  drew unemployment because he was laid off with COVID.  So, you

22  know, those are the nature and circumstances -- or the history

23  and characteristics.

24      You know, to that extent you do argue for release,

25  but we have the four felony convictions.  And there was

*TRANSCRIBED FROM DIGITAL RECORDING*
*2:21-cr-00002-JAD-NJK-1 • 1/29/2021*

1    selling drugs involved as well as weapons and, of course, the

2    robbery, but he was young when he was involved in that.

3            I think probably the toughest thing for me here on

4    this is that he -- his probation was revoked just in September

5    of '20.  And so, you know, when you committed this offense, he

6    was subject to conditions of release, which is an important

7    factor when I'm considering the release condition.  He does

8    have a substance abuse history.  The felon in possession of a

9    firearm and the weapons history speak to danger to other

10   persons or the community

11           Accordingly, the Court finds by a preponderance of

12   the evidence that no condition or combination of conditions

13   will reasonably assure the appearance of the defendant

14   [indiscernible] and by clear and convincing evidence that no

15   condition or combination of conditions will reasonably assure

16   the safety of other persons or the community.  Accordingly,

17   the defendant's ordered detained pending trial.  He'll be

18   committed to the custody of the U.S. Marshal for confinement

19   in a corrections facility separate, to the extent practicable,

20   from persons awaiting or serving sentences with reasonable

21   opportunity for private consultation with counsel.

22           Okay.  So I've done that.  We've got the trial date.

23           So I now want to talk about getting him back there to

24   do the parole.  So this is what I'm inclined to do, and then

25   I'll hear from both sides.  I am going to order that, if the

1    authorities that have custody of him here and in the state can

2    work out a way with the COVID restrictions and everything to

3    get him back there in time for his hearing and he can have his

4    hearing, and then he can be transported back to here as soon

5    as the hearing is over, regardless of the outcome.

6            And then, as far as moving to reopen, I mean, you

7    always have a right to move to reopen, but you do have to meet

8    the standard.  Okay?

9            Mr. Cowhig, is -- would that work for you?

10           **MR. COWHIG:**  Yes, Your Honor.

11           Could your order also include that the authorities

12   explore whether Mr. Whitney could appear for his probation

13   hearing by VTC from Pahrump --

14           **THE COURT:**  Oh, right.

15           **MR. COWHIG:**  -- to obviate --

16           **THE COURT:**  Yes.

17           **MR. COWHIG:**  -- to obviate the need for movement and

18   potential exposures?

19           **THE COURT:**  That -- you know, I imagine they're

20   probably being by video anyway.  Do you know, Ms. Zheng?

21           **MS. ZHENG:**  I -- I know that generally, when I appear

22   in front of the Parole Board, whenever their agenda is set

23   out, most of the people are generally at High Desert, and then

24   they bring them in the room.  They have very limited

25   [indiscernible] to regards to that because I've tried to

```
 1   appear via video also for parole hearings, and they can't do
 2   that because they just don't have the capability.  They only
 3   have the capability for one video feed at a time, and
 4   generally that is to High Desert.
 5          THE COURT:  Right.  Okay.  All right.  Well, you
 6   know, I will add in there just to put in there, if you would,
 7   Tawnee, that if video appearance can be arranged so that he
 8   doesn't have to be transported, you know, that would be
 9   preferable.  But if it can't, I'd like the parties to work
10   together to see if you can't get him to get that parole
11   hearing done so, you know, we can move forward in both places.
12          And I guess -- I don't know if I need to find but --
13   whether the waiver's effective or not.  I think under that
14   section that I talked about I can order this even if he
15   doesn't waive his rights under the anti-shuttling statute.  So
16   I -- I think I'm on good legal ground there.  Okay.
17          MR. COWHIG:  Yes, Your Honor.  But we ask that you --
18   you hold off issuing that order until Mr. Whitney enters the
19   waiver of the time frame set out in the Interstate Agreement
20   on Detainers.
21          THE COURT:  Oh.  Okay.
22          MS. ZHENG:  Well --
23          THE COURT:  It's the waiver --
24          MS. ZHENG:  -- while we're --
25          THE COURT:  Hold on a minute.
```

1          That's two different things.  So we're talking about

2    speedy trial-type waiver.  That's a different waiver from the

3    compact waiver.

4          **MR. COWHIG:**  It is a different waiver from speedy

5    trial, Your Honor.  It's a shorter time frame with fewer

6    exceptions under the interstate agreement.

7          **THE COURT:**  Okay.  Well, I can just -- I mean,

8    couldn't his counsel just do that on the record right now?

9          Do you -- you waive the time frames under the

10   compact?

11         **MS. ZHENG:**  Stephon?

12         **THE COURT:**  I'm sorry?

13         **THE DEFENDANT:**  Yes?

14         **MS. ZHENG:**  Okay.  So, in essence, what they're

15   saying is you want to go back to state to finish your time and

16   so that you can appear in front of the Parole Board.

17   Generally, under this Interstate Agreement on Detainers, what

18   it is, is that when either one jurisdiction -- in this case,

19   the feds -- bring you over or if you ask to come

20   [indiscernible] feds to resolve the case, they have a set

21   amount of time that they have to resolve your case by.

22   Otherwise, it would -- you could petition the Court to dismiss

23   the indictment as a result of them not being able to follow

24   that time; right?

25         But in this case, because I do want you to make

1    Parole Board and -- you would essentially -- because of the

2    way the commissioners work, you would have to go back to state

3    in order to appear for that unless they have some other way to

4    do it from Pahrump.  That you would waive the timeline for

5    which the Government has to bring you to trial so that we can

6    resolve the case or otherwise.  But you would have to waive

7    the timeline under the Interstate Agreement on Detainers.  Do

8    you understand that?

9              **THE DEFENDANT:**  Yes.

10             **MS. ZHENG:**  Are you okay with waiving that timeline?

11   We'd have to make waiver for the record.

12             **THE DEFENDANT:**  I mean, what's interesting to me is

13   that, if I'm being detained in Pahrump by the federal system,

14   it kind of wouldn't even be relevant about my parole hearing

15   anyway.  Because no matter what they decide to do, I wouldn't

16   be getting parole.

17             **MS. ZHENG:**  No --

18             **THE DEFENDANT:**  I mean, I wouldn't be -- I wouldn't

19   be being released.

20             **MS. ZHENG:**  It does.  So there is a difference

21   between --

22             **THE COURT:**  No.  Hold on, Ms. Zheng.  Ms. Zheng.

23   Ms. Zheng, you know what?  I've got a little bit of time here.

24   So -- what time is it, Tawnee?

25             **COURTROOM ADMINISTRATOR:**  [Indiscernible].

*TRANSCRIBED FROM DIGITAL RECORDING*
*2:21-cr-00002-JAD-NJK-1 • 1/29/2021*

1    **THE COURT:**  Oh yeah.  I have something at 11:00.  But

2    I think what I ought to do is we can put them in a room;

3    right?  Why don't we put the two of you in a room so --

4    **MS. ZHENG:**  Okay.

5    **THE COURT:**  -- you can explain all this to him

6    without the Government and me listening to it.  And then, when

7    you're ready, can you e-mail my courtroom deputy, let her know

8    you're ready to come back into the hearing, and we'll bring

9    you back in.

10   **MS. ZHENG:**  Sure.

11   **THE COURT:**  And then, if your client wants to waive

12   the time under the act, he can.  And if he doesn't, he can't.

13   It's his choice to make one way or another.  But --

14   **MS. ZHENG:**  Sure.

15   **THE COURT:**  Okay.  So -- but, of course, if he

16   doesn't, then I guess I really can't order him -- what I was

17   trying to order to make the parole happen, I wouldn't be able

18   to do that if you won't waive it; right?  You understand?

19   **MS. ZHENG:**  We'll ask for the breakout, yes, Your

20   Honor.

21   **THE COURT:**  Okay.

22   *(Audio recording paused at 10:36 a.m., until 10:50 a.m.)*

23   **THE COURT:**  -- discussed this with your client, is he

24   willing to waive the time periods under the Interstate

25   Compact?

1          **MS. ZHENG:**  He is.  And specifically he would have to

2   waive it so that this case is [indiscernible] and that speedy

3   trial counts under the Speedy Trial Act [indiscernible].

4          **THE COURT:**  Right.  That will -- the Speedy Trial Act

5   will still apply under the Court's rules here.  It's just the

6   compact is all he's waiving; right?  Everyone's clear on that?

7          **MS. ZHENG:**  Yes.

8          **THE COURT:**  Okay.  Then my order will stand, and

9   we'll see if this works.  All right?

10          **MS. ZHENG:**  Thank you, Your Honor.

11          **THE COURT:**  Thank you.  Take care.

12      *(Proceedings adjourned at 10:50 a.m.)*

13                              * * *

14      I, AMBER M. McCLANE, court-appointed transcriber, certify

15   that the foregoing is a correct transcript transcribed from

16   the official electronic sound recording of the proceedings in

17   the above-entitled matter.

18

19      /s/_____  5/1/2023
        AMBER MCCLANE, RPR, CRR, CCR #914         Date

20

21

22

23

24

25